UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIE WADE,<br><br>    Plaintiff,<br><br>    v.<br><br>MS. LISA MILLS, L. MSV,<br><br>    Defendant. | No. 19-CV-21501(NLH)(AMD)<br><br><br>OPINION |

APPEARANCES:

Willie Wade
Inmate #: 549521A
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

    *Plaintiff, Pro se*

HILLMAN, District Judge

    Plaintiff Willie Wade, a former New Jersey state inmate at South Woods State Prison ("South Woods"),[1] filed this civil rights action against Defendant Lisa Mills, a nurse practitioner at South Woods, pursuant to 42 U.S.C. § 1983. Plaintiff argues that Defendant has known that Plaintiff had Hepatitis C since 1995 but refused to treat Plaintiff or provide his medical records despite

---

[1] Plaintiff filed this action while incarcerated. The New Jersey Department of Corrections website indicates that Plaintiff was incarcerated at South Woods from September 9, 2016 until his release on October 24, 2020, while this screening was pending.

multiple administrative requests, or ignored the requests.[2] Complaint, ECF No. 1, ¶¶ 4(b), 5-6.  Plaintiff seeks an order directing the production of his records, damages for the "long delay of treatment and liver damage[] caused," and punitive damages totaling $400,000, and declaratory and injunctive relief, including an order enjoining retaliation against Plaintiff for filing this Complaint.  ECF No. 1, ¶ 7.

This Court permitted Plaintiff to proceed in forma pauperis. ECF No. 2.  Pursuant to 28 U.S.C. § 1915(e)(2), the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious or for failure to state a claim upon which relief may be granted.  For the reasons below, the Complaint is dismissed without prejudice as to the Eighth Amendment/deliberate indifference claims, and with prejudice as to all other claims.

I.   BACKGROUND

Accepting as true the claims in the Complaint and supporting documents, Plaintiff claims that Defendant knew of Plaintiff's 1995 Hepatitis C diagnosis, yet failed to treat the disease or disclose Plaintiff's medical records, including information regarding Plaintiff's viral load, despite requests dating back to 2018.  ECF No. 1, ¶¶ 5-7.  Plaintiff attaches several requests to

---

[2] According to Plaintiff, obtaining the records "is the only way Plaintiff can find out the condition of his liver."  ECF No. 1, ¶ 7.

the Complaint: (1) an August 5, 2019 record request for "blood work ... done in May 2019 checking ... Hep. C viral load"; (2) an identical August 27, 2019 follow-up request; (3) an August 27, 2019 Health Services Request form indicating that Plaintiff has "suffered [from] Hepatitis C ... for ... years" and requesting treatment; (4) a September 9, 2019 Inmate Inquiry Form following up on the August 27, 2019 Health Services Request; (5) a September 15, 2019 inmate inquiry form regarding the prior record requests; (6) a November 6, 2019 follow-up to the prior record requests; and (7) a November 6, 2019 follow-up to the prior treatment requests.  ECF No. 1-1, pp. 1-9.  The Court interprets the Complaint as asserting two claims: one for deliberate indifference, and a second for the failure to respond to Plaintiff's request for medical records or grievances regarding treatment.

II.   STANDARD OF REVIEW

The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), requires district courts to review complaints in those civil actions in which a prisoner is proceeding in forma pauperis, seeks redress against a governmental employee or entity, or brings a claim with respect to prison conditions.  See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

However, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

III. ANALYSIS

A. Prospective/Injunctive Relief

As an initial matter, all claims for prospective relief are denied because Plaintiff is no longer an inmate at South Woods. Bragg v. Petrillo, No. CV 16-8751, 2017 WL 3075155, at *1 (D.N.J. July 19, 2017) ("Generally, requests for injunctive relief for claims involving adverse prison administrative actions, regardless of their possible merits, become moot once the prisoner is no longer subject to the challenged action.") (citing Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993)); see also McAlpine v. Thompson, 187 F.3d 1213, 1215 (10th Cir. 1999) ("... inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow 'capable of repetition, yet evading review' exception to the mootness doctrine."). Accordingly, the claims for injunctive relief, including any claims to enjoin retaliation by Defendant or other prison officials, to cease violation of Eighth and Fourteenth Amendment constitutional rights, or to produce medical records, will be denied. Only Plaintiff's retrospective claims

remain - that Defendant's deliberate indifference and failure to provide medical records injured Plaintiff.

B.    Grievances and Medical Record Requests

Plaintiff claims that his grievances relating to treatment and medical record requests were denied or ignored.  However, there is no federal remedy available for either.

First, even assuming that Defendant did, indeed, ignore Plaintiff's grievances regarding treatment, any claim regarding the grievance process itself is not cognizable. See Allah v. Thomas, 679 F. App'x 216, 219 (3d Cir. 2017) ("…[W]e have never held that a prison is required by the Constitution to offer a grievance procedure to answer submitted grievances.  Instead, when the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right to access the courts, which is not compromised by the prison's refusal to entertain his grievance." ...[A]ny alleged failure on the part of prison officials here to consider [plaintiff's] grievances does not in itself give rise to a constitutional claim, as he was free to bring a civil rights claim in the District Court, as he did here.") (internal quotations omitted).  Phrased differently, as long as a plaintiff can petition a court to address the underlying substance of the grievance, the sufficiency of the

6

grievance process itself does not give rise to a constitutional claim.  Accordingly, this claim will be dismissed with prejudice.

Similarly, Plaintiff's claim that Defendant failed to provide Plaintiff's medical records (or ignored his requests) also fails to state a claim.  A New Jersey state regulation affords inmates a means to obtain their medical files.  See, e.g., N.J. Admin. Code § 10A:22-2.7(a) ("... [A]n inmate may obtain a copy of his or her medical records by submitting a written request, on Form MR-022, to the Medical Department"); see also N.J. Admin. Code § 10A:22-2.7(e) (permitting medical staff to withhold medical reports under certain circumstances).[3]  The regulation was adopted in response to the New Jersey Supreme Court's direction, in J.D.A. v. New Jersey Dep't of Corr., that NJDOC

> expeditiously enact comprehensive rules and regulations codifying its obligations for medical care and record keeping, and the methods by which they will be satisfied[, including] DOC's duty to notify inmates of any serious medical condition requiring treatment; to keep complete and accurate medical records (electronic or paper) including all test results and lab reports and to make those complete medical records available to each inmate; and to provide a procedure pursuant to which an inmate may, within a reasonable time after a request, access medical records and seek correction of them.

---

[3] Given Plaintiff's recent release from prison, a separate provision directs officials to provide Plaintiff a medical discharge summary, and permits Plaintiff to obtain the records later at no charge.  N.J. Admin. Code § 10A:22-2.8.

189 N.J. 413, 418-19 (2007).

Notably, the J.D.A. Court issued the directive after determining that NJDOC's concession that "it, indeed, has a non-delegable duty to assure adequate medical care...includ[ing]... maintaining and making available complete and accurate medical records" rendered moot "the need...to grapple with J.D.A.'s claims of entitlement under the Federal Constitution."  189 N.J. 413, 418 (2007).  Since the regulation's adoption in 2008, the only court to address whether a defendant's failure to comply rises to a constitutional violation has found that it does not. Hearns v. Johnson, No. CV 16-3284, 2016 WL 4690386, at *6 (D.N.J. Sept. 6, 2016) ("It is clear...that a violation of those statutes would not qualify as a constitutional violation sufficient to support a claim raised under 42 U.S.C. § 1983 or its state analog.").  This Court agrees with the Hearns Court that nothing in the regulation creates a private cause of action, and that no New Jersey state or federal court has recognized any constitutional right to access medical records which would support a § 1983 claim.  See also Ball v. Famiglio, No. 1:CV-08-0700, 2011 WL 1304614, at *9 (M.D. Pa. Mar. 31, 2011) ("While inmates have a constitutional right to access to medical care, there is no authority for an Eighth Amendment right to review medical records.") (citation omitted); Smith v. Myers, No. 2:16-CV-919, 2019 WL 9904324, at *5 (M.D. Ala. Dec. 30, 2019)

o

(collecting cases holding that Fourteenth Amendment does not create an unrestricted property right to inspect and copy one's own medical records), report and recommendation adopted, No. 2:16CV919, 2020 WL 4819535 (M.D. Ala. Aug. 19, 2020); cf. Wesley v. Davis, 333 F. Supp. 2d 888, 894 (C.D. Cal. 2004) (finding that shredding an inmate's medical file to harass and threaten him violates the Eighth Amendment).  Accordingly, the Court will dismiss this claim as well.

In dismissing this claim, the Court expresses no opinion as to whether Plaintiff has a cause of action against state persons or entities in state court or before state administrative bodies for failures to abide by the New Jersey Administrative Code.  See Reed v. Williams, No. 3:18-CV-00377, 2020 WL 6158304, at *11 (M.D. Pa. Oct. 21, 2020) (finding that state statute ensuring the rights of patients to access their own medical records was applicable and declining to exercise supplemental jurisdiction over that claim).

C.   Deliberate Indifference

Plaintiff alleges that Defendant failed to treat his Hepatitis C, including the refusal to honor sick call requests, but that portion of the Complaint also fails to state a claim for relief.  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Thus, "[t]o establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). To properly plead a civil rights claim against an individual government defendant, the complaint must indicate how that defendant had personal involvement in the alleged wrongdoing, which can be shown through allegations of personal direction or of actual knowledge and acquiescence.[4] Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

---

[4] Plaintiff may not sue the State in federal court unless Congress has expressly abrogated New Jersey's sovereign immunity or the State has consented to being sued in federal court. Will, 491 U.S. at 66; U.S. Const. Amend. XI. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

The Eighth Amendment to the United States Constitution, applicable to states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  To state a claim for a violation of the right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Hepatitis C is generally a serious medical need.  Hubbard v.

---

To the extent that Plaintiff names only Defendant and alleges only her personal actions, the Court interprets Plaintiff's claim as a suit against Defendant only in her individual, not official, capacity.

Lanigan, No. CV 18-2055, 2018 WL 1905804, at *3 (D.N.J. Apr. 23, 2018).

The second prong requires an inmate to prove that a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) (internal quotation omitted). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. To establish deliberate indifference, a plaintiff must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond to that need. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

"[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made my most non-prisoners in our society." Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997). Nonetheless, and while "administrative convenience and cost may be, in appropriate circumstances, permissible factors for correctional systems to consider in

12

making treatment decisions, the Constitution is violated when they are considered to the exclusion of reasonable medical judgment about inmate health." Allah, 679 F. App'x at 218-20 (quoting Roe v. Elyea, 631 F.3d 843, 863 (7th Cir. 2011)).

To plead deliberate indifference in the Hepatitis C treatment context, an individual must plead a lack of necessary treatment. Allah, 679 F. App'x at 220 (permitting claim where plaintiff "alleged that he did not receive any treatment for his Hepatitis C condition, that he was not placed on a newly developed Hepatitis C treatment regimen solely because it was cost-prohibitive, and that he was suffering medical complications as a result") (emphases in original); Baker v. Barnes, No. CIV. 11-0992, 2012 WL 95363, at *4 (D.N.J. Jan. 12, 2012) ("[W]hether anti-viral treatment for chronic liver disease is medically warranted is a question of medical judgment.").

Numerous courts have held that newly developed direct-acting antiviral medications, such as Harvoni, are the "standard of care" for chronic Hepatitis C. Abu-Jamal v. Kerestes, No. 3:15-CV-00967, 2016 WL 4574646, at *9-14 (M.D. Pa. Aug. 31, 2016) (denying preliminary injunction but holding, in dicta, that the prison's policy of delaying DAA medications "until the inmate faces the imminent prospect of 'catastrophic' rupture and bleeding out of the esophageal vessels ... exposes inmates to [significant health risks], despite knowing that the standard of

13

care is to treat patients with chronic Hepatitis C with DAA medications ... regardless of the stage of disease."). But such decisions addressed complaints in which the plaintiff alleged a specific diagnosis and treatment which would prevent (or would have prevented) worsening symptoms. See, e.g. Hubbard v. Lanigan, No. CV 18-2055, 2018 WL 1905804, at *3 (D.N.J. Apr. 23, 2018) (permitting claim where plaintiff was on Hepatitis C treatment list, and alleged that prison authorities had a policy of waiting to treat patients until "significant liver damage" for budgetary reasons); Doughty v. LeBlanc, No. CV 17-1377, 2018 WL 4496659, at *8 (M.D. La. Aug. 28, 2018) (recommending denial of motion to dismiss where complaint "can be fairly read to allege that he is currently receiving no treatment for Hepatitis C, continues to have symptoms, and that the denial of treatment with Harvoni was due to cost") (emphasis added)(citing Allah, 679 Fed. App'x 216), report and recommendation adopted, 2018 WL 4494980 (Sept. 19, 2018); Vaught v. Williams, No. CV 17-1693, 2018 WL 6137195, at *3 (C.D. Cal. Feb. 26, 2018) (permitting claim alleging that defendant refused to treat Hepatitis C with desired or alternative treatment, and would not do anything other than wait five more years to conduct scan to determine extent of liver damage) (citing Allah, 679 Fed. App'x at 220; Henderson v. Tanner, No. CV 15-0804, 2017 WL 1017927, at *4 (M.D. La. Feb. 16, 2017) (collecting cases discussing the potentially curative

14

effects of Harvoni, a Hepatitis C medication, which the plaintiff "specifically requested"), report and recommendation adopted, 2017 WL 1015321 (M.D. La. Mar. 15, 2017).

Here, Plaintiff alleges that he was diagnosed with Hepatitis C in 1995, and that Defendant knew about the diagnosis. ECF No. 1, ¶¶ 4(b), 6. But beyond the fact, and Defendant's awareness, of Plaintiff's diagnosis, Plaintiff does not allege any symptoms (new or otherwise), or a factual basis for his conclusion that Defendant's action or inaction resulted in liver damage. To the contrary, Plaintiff's request for his 2019 blood work and viral load information suggests that Defendant (or other medical officials) did, in fact, respond to Plaintiff's 2018 efforts "to push hard for treatment." ECF No. 1, p. 5. This implies Plaintiff's disagreement with a particular course of treatment, which is not grounds for a deliberate indifference to serious medical needs claim. Thomas v. Dragovich, 142 Fed. Appx. 33, 36 (3d Cir. 2005) (citing Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); Whittington v. Caldwell, No. CV 319-082, 2020 WL 2045286, at *6 (S.D. Ga. Mar. 4, 2020) (dismissing amended complaint where plaintiff did not allege "any specific deterioration in his condition since entering the prison system, ... any resultant harm particular to his situation, ... [or that] any physician, either before or after he entered the prison system in 2019, has ordered treatment

15

beyond the monitoring program currently in place."), report and recommendation adopted, 2020 WL 2042367 (S.D. Ga. Apr. 28, 2020); cf. Fisher v. Longtin, No. 3:19-CV-00769, 2019 WL 5694011, at *1 (M.D. Tenn. Nov. 4, 2019) (finding that plaintiff stated a claim where he repeatedly asked for Hepatitis C treatment and "has not received any blood work or monitoring to see the progression of the disease or the damage progression of his liver.") (internal quotations omitted).  Accordingly, Plaintiff's complaint fails to state a claim for relief.

D.   Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [§ 1915] should receive leave to amend unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).  As Plaintiff may be able to provide facts supporting his deliberate indifference claims, he may move to amend his complaint within 60 days of this Opinion and Order.

Plaintiff should note that when an amended complaint is filed, the complaint no longer performs any function in the case and cannot be utilized to cure defects in the complaint, unless the relevant portion is specifically incorporated in the new complaint.  6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted).  The amended complaint may adopt some or all of the allegations in the

16

complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is itself complete.  Id.  Plaintiff's new complaint may not include claims that were dismissed with prejudice.  In the event Plaintiff does not move to amend his complaint within 60 days, the dismissal without prejudice shall convert into a dismissal with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii), without further action by the Court.

IV.  CONCLUSION

For the above reasons, the Eighth Amendment/deliberate indifference claim is dismissed without prejudice for failure to state a claim, with leave to file an amended complaint within 60 days, and the remaining claims are dismissed with prejudice.

An appropriate order follows.


Dated:  February 23, 2021           s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.